UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OSSIE GILES,

Plaintiff,

v.

G. FORNCROOK, et al.,

Defendants.

Case No.  18-cv-07466-YGR (PR)

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

## I.   INTRODUCTION

Plaintiff, a state prisoner currently incarcerated at San Quentin State Prison ("SQSP"),

filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Dkt. 1.  He seeks monetary

damages.  *Id.* at 3.[1]

In its July 15, 2019 Order of Partial Dismissal and Service, the Court found Plaintiff's

complaint stated cognizable Eighth and First Amendment violations against the following

Defendants at SQSP: Associate Wardens G. Forncrook and R. Broomfield[2]; Captain J. Arnold;

Lieutenants B. VanMastrigt and R. Shelton; Sergeants J. Sangmaster; Correctional Counselor II A.

Maxfield; Chief Disciplinary Officer Y. Samara; Correctional Officers F. Jaugan, and J.

Cartwright; Office of Appeals Chief M. Voong; and Psychologist R. Pearl (hereinafter

"Defendants").[3]  Dkt. 6 at 2-4.

The parties are presently before the Court on Defendants' motion for summary judgment.

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

[2] In his complaint, Plaintiff misspelled Defendant Broomfield's last name as "Bloomfield." Dkt. 1 at 2.  The Court has since been informed that the correct spelling is "Broomfield."  Dkt. 10 at 2.

[3] In its July 15, 2019 Order, the Court dismissed Plaintiff's access to the courts claim against Defendant Sergeant Madding and the supervisory liability claim against Defendant Warden Ron Davis.  Dkt. 6 at 4-5.  The Court had also found a cognizable First Amendment claim for denial of access to established grievance procedures against Defendant Lieutenant M. Nelson. *Id.* at 4.  However, on March 3, 2020, pursuant to a stipulation by the parties, the Court dismissed Plaintiff's claims against Defendant Nelson.  Dkt. 20.

United States District Court
Northern District of California

In their motion, Defendants contend that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), as to Plaintiff's First Amendment claims against Defendants Voong and Broomfield, and that they are entitled to judgment as a matter of law as to the remaining claims.  In the alternative, Defendants argue they are entitled to qualified immunity.  Plaintiff has filed an opposition to Defendants' motion, and Defendants have filed a reply.  Dkts. 26, 28.  Having read and considered the papers submitted and being fully informed, the Court hereby GRANTS Defendants' motion for summary judgment.

## II.   BACKGROUND

### A.   Factual Background

The following background of Plaintiff's claims is taken from the Court's July 15, 2019 Order:

> Plaintiff claims that on November 13, 2017, he filed a 602 inmate appeal, log no. SQ-A-17-3257, against Defendant Cartwright for "disrespect and defamation [by] calling Plaintiff a pedophil[e]" during a confrontation on November 8, 2017.  Dkt. 1 at 8.  Plaintiff claims that he exhausted this appeal to the third level of review, and that his appeals were "denied." *Id.* at 8-14.
>
> Plaintiff claims that eight days after the confrontation, on November 16, 2017, he was placed in administrative segregation ("ad seg") by Defendants VanMastrigt as well as Classification Committee members Defendants Forncrook and Maxfield "pending a [Rules Violation Report ("RVR")] 115 outcome written by [Defendant] Cartwright whos[e] description of the incident was [en]titled ['] force or violence threatening a peace officer['] [and] also [alleged] a pattern of blatant disrespect towards him on multiple occasions [including] 6-23-2017, 7-12-2017, 7-27-2017 and 9-16-2017." *Id.* at 6, 15-18.  Plaintiff claims that there was "no documentation of these accusations . . . ." *Id.* at 15-18.  Plaintiff claims that the charges on the RVR were "false." *Id.* at 17.  Plaintiff adds that Defendant Jaugan filed a "false supplemental report" to the RVR. *Id.* at 6, 17.  Plaintiff indicates that Defendant Sangmaster approved both the RVR and supplemental reports, and that Defendant Arnold requested a mental health assessment. *Id.* at 30.
>
> Plaintiff claims that he had never been placed in ad seg during the thirty-one years he has been incarcerated. *Id.* at 23.  On November 29, 2017, Plaintiff claims that Defendant Pearl, an SQSP psychologist, conducted an "RVR mental health assessment of Plaintiff," and indicated that he "is adjusting with no significant psychiatric distress and if Plaintiff is found guilty [of the RVR] there are no apparent mental health factors or functioning deficits that should be consider[ed] when assessing a [Secure Housing Unit] term." *Id.* at 19.  In contrast, Plaintiff claims that he "ask[ed] for increases in both his medications" due to his "anxiety" and sleep

deprivations from being housed in ad seg.  *Id.* at 26.

At Plaintiff's December 4, 2017 disciplinary hearing, Defendant Shelton, the hearing official, found Plaintiff "guilty as charged based on a preponderance of evidence using [Defendant] Cartwright's report RVR 115."  *Id.* at 29.  Plaintiff claims that Defendant Shelton did not take into account Plaintiff's "RVR supplemental witness report" or his "other witness statements [by] [Correctional Officers] M. Martinez [and] N. Faghirzaden [and] inmate's statements."  *Id.* at 40.  On December 5, 2017, Defendant Samara, as Chief Disciplinary Officer, affirmed the December 4, 2017 hearing results.  *Id.* at 37-39.  Plaintiff appealed the guilty finding at the Defendant 4, 2017 hearing, and pursued this appeal to the final level of appeal where it was denied.  *Id.* at 43.

Plaintiff claims that based on the aforementioned actions, Defendants participated in "violation [his] First and Eight[h] Amendment [rights], which protects [him] against retaliation for filing a grievance and cruel and unusual punishment."  *Id.* at 7.  Plaintiff adds that "[e]ach named supervisor[] had all relevant evidentiary documents available to them, which clearly shows retaliation, but they chose to ignore these documents and move forward with this illegal [ad seg] admittance of Plaintiff."  *Id.*

Dkt. 6 at 2-3.

## B.   The Court's Initial Review of Complaint

In its July 15, 2019 Order, the Court found "[w]hen liberally construed, Plaintiff's complaint state[d] a cognizable First Amendment and Eighth Amendment claims against Defendants Cartwright and Jaugan for authoring false RVR and supplemental reports, respectively, and for causing Plaintiff's removal from his housing and placement into ad seg" for forty-four days from November 15, 2017 through December 28, 2017.  *Id.* at 3.  The Court further determined that the complaint stated "a cognizable claim against Defendants VanMastrigt, Forncrook, Maxfield, Pearl, Sangmaster, Arnold, Shelton, and Samara for the violation of Plaintiff's right to due process insofar as he was removed from his housing and placed into ad seg without evidentiary support, and for a violation of his First Amendment rights insofar as they were involved in failing to rectify or correct the false RVR."  *Id.*  Lastly, the Court found that the allegations against Defendants Broomfield and Voong stated a cognizable First Amendment claim for denial of access to established grievance procedures.  *Id.* at 4.

## C.   Plaintiff's Deposition Testimony

During his deposition, Plaintiff stated that he never filed an administrative grievance in

United States District Court
Northern District of California

connection with his claim that Defendants Broomfield and Voong denied him access to established grievance procedures in violation of the First Amendment.  Quinn Decl., Ex. A at 32:7-18.

In discussing his retaliation claim, Plaintiff testified in his deposition that Defendants Arnold, Sangmaster, Samara, Shelton, Pearl, Maxfield, Forncrook, and VanMastrigt retaliated against him because they could have released him from ad seg but failed to do so.  *Id.* at 22:12-23:3; 28:23-29:4.  According to Plaintiff, Defendant Cartwright retaliated against him by "falsifying a document [i.e., the RVR] that led to [his] removal from GP [general population] and place[ment] in [ad seg]."  *Id.* at 33:2-4.  Plaintiff added that Defendant Jaugan retaliated against him by preparing a supplemental rules violation report that contained lies and "bolster[ed]" Defendant Cartwright's RVR.  *Id.* at 29:8-25, 31:11-32:1.  Plaintiff claimed that the Defendants named above "could have stopped" his placement in ad seg, but "they stuck together on . . . something that's not the truth [Cartwright's RVR]."  *Id.* at 22:12-23:3.  Plaintiff claimed that many of the aforementioned Defendants did not communicate with him about the November 13, 2017 grievance against Defendant Cartwright.  *Id.* at 18:10-11 (Defendant Pearl); 23:4-7 (Defendant Samara); 31:9-17, 32:2-6 (Defendant Jaugun); 33:5-15 (Defendant Cartwright).  Plaintiff further claimed that some of the remaining Defendants did not communicate with him outside of their decisions relating to his placement in ad seg.  *Id.* at 23:18-24 (Defendant Sangmaster); 28:1-10 (Defendant Arnold).

Finally, Plaintiff confirmed that he never mentioned that he suffered from anxiety, sleep deprivation, or any other "psychological or mental health issue that [he was] having in the ad seg" to Defendant Pearl, an SQSP psychologist, on November 29, 2017, after he was moved to ad seg.  *Id.* at 15:21-18:11.  In fact, after being transferred to ad seg, he met with another psychologist, Dr. Bachnick (a non-party), and reported that he had "some adaptation to the ad seg unit," "denied any changes in appetite or sleep," and complained only of weight-loss due to lack of food in his cell.  *Id.* at 18:25-19:17.  Plaintiff also made the following statement to Dr. Bachnick: "[N]ow that I got my legal paperwork, I can work on it without distraction, so it's probably a good thing."  *Id.* at 19:2-6, 44:11-19.

### D.    Defendant Cartwright's Declaration

Defendant Cartwright, who worked as an SQSP correctional officer in 2017, claims that on November 8, 2017, Plaintiff "made a number of threatening remarks to [Defendant Cartwright], such as, 'You're nothing by a coward, you fucking bitch,' and 'I'll beat your ass when I get out of here.'" Cartwright Decl. ¶ 2. Defendant Cartwright claims that he was "sick from work on both November 9, 2017 and November 10, 2017, and was then off work between November 11, 2017 and November 14, 2017." *Id.* ¶ 3. He returned to work on November 15, 2017, and "prepared a[n] [RVR] concerning the November 8, 2017 incident." *Id.* ¶¶ 3-4. Defendant Cartwright states that "[l]ater that morning, after the report had been submitted, [Plaintiff] was moved from the institution's general population to ad seg because of the threatening remarks that he made to [Defendant Cartwright] during the incident." *Id.* ¶ 4. Defendant Cartwright states that "[f]ollowing the December 4, 2017 hearing, [Plaintiff] was found guilty of threatening staff during the November 8, 2017 incident." *Id.* ¶ 7.

Defendant Cartwright states that he "did not learn [Plaintiff] had filed an administrative grievances against [him] until weeks after the incident." *Id.* ¶ 6. Defendant Cartwright also claims that he "had no knowledge of the grievance when [he] prepared the [RVR]." *Id.*

## III.    DISCUSSION

### A.    Legal Standard

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87

(1986).

The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). The defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172; *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden of proof remains with defendants, however. *Id.* "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166.

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). Submitted by Defendant in support of the motion for summary judgment are declarations from Defendant Cartwright (dkt. 28-1, Cartwright Decl.) and Defendants' attorney, Deputy Attorney General Michael Quinn (dkt. 21-1, Quinn Decl.), as well as Plaintiff's deposition (*id.*, Ex. A). Meanwhile, Plaintiff has filed his verified complaint and attached exhibits. Dkt. 1. The Court will construe this filing as an affidavit under Federal Rule of Civil Procedure 56, insofar as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995). However, Plaintiff has not verified his opposition and declaration because he failed to sign them under penalty of perjury.[4] Dkt. 26 at 25.

---

[4] The Court notes that even if it considered Plaintiff's allegations in his opposition to the extent such allegations are based on his personal knowledge and set forth specific facts admissible in evidence, *see Schroeder*, 55 F.3d at 460 & nn.10-11, the result would not change. Plaintiff's opposition fails to address key arguments made by Defendants, including that: (1) authoring alleged false RVR reports does not violate the First and Eighth Amendments; (2) housing an inmate in ad seg for forty-four days does not amount to a violation of the Eighth Amendment; and (3) his First Amendment claim against Defendants Broomfield and Voong are unexhausted. *See* Dkt. 26. Further, even if Plaintiff's unverified opposition seems to ignore his deposition testimony and alleges that Defendants retaliated against him for filing a grievance, *id.* at 9, the Court explains below that he still fails to show evidence that any of the Defendants expressed any animus towards Plaintiff or his history of filing administrative appeals, including the November 13, 2017 grievance against Defendant Cartwright, *see* DISCUSSION Part III.C.1.

United States District Court
Northern District of California

**B.      Exhaustion Under the PLRA**

**1.   Overview**

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective."  *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 739-40 (2001).  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  *Booth*, 532 U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money."  *Id.* at 734.

The PLRA requires *proper* exhaustion of administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90-91.  Thus, compliance with prison grievance procedures is required by the PLRA to properly exhaust.  *Id.* The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  *Id.* at 83.

The regulations that set out the features of the administrative remedies process for California prisoners underwent a substantial restructuring in 2020.[5]  On March 25, 2020, and effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487.  The regulations in effect for several years before June 1, 2020, provided CDCR inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a

---

[5] As explained below, the relevant time-frame for Plaintiff's claims is from November through December of 2017, therefore, the amended regulations from 2020 were *not yet* in effect.

7

United States District Court
Northern District of California

material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (repealed eff. June 1, 2020). Inmates also had the right to file administrative appeals alleging misconduct by correctional officers. *See id.*

From January 28, 2011,[6] until June 1, 2020, the regulations provided a three-level system for an inmate to exhaust administrative remedies: first level appeal, second level appeal, and third level appeal. Cal. Code Regs. tit. 15, § 3084.7 (repealed eff. June 1, 2020). In order to exhaust available administrative remedies within this system during November to December 2017, the relevant time frame of Plaintiff's claims, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDCR 602 inmate appeal form ("602 appeal"), (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the CDCR (i.e., Director's Level). *See id.* § 3084.5; *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). This satisfies the administrative remedies exhaustion requirement under § 1997e(a). *See id.* at 1237-38.

Here, Defendants contend that Plaintiff failed to properly exhaust his available administrative remedies as to his First Amendment claim against Defendants Voong and Broomfield. Dkt. 21 at 14. Specifically, in support of this argument, Defendant notes that during Plaintiff's deposition, "[Plaintiff] stated that he never filed an administrative grievance in connection with his claim that Defendants Broomfield and Voong denied him access to established grievance procedures in violation of the First Amendment." *Id.* at 11 (Quinn Decl., Ex. A, 32:7-18).

### 2. Analysis Relating to First Amendment Claim Against Defendants Broomfield and Voong

Although non-exhaustion under Section 1997e(a) is an affirmative defense, a prisoner's concession to non-exhaustion is a valid ground for dismissal. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003) (prisoner's concession to non-exhaustion is valid ground for

---

[6] The regulations pertaining to the inmate appeal process were initially amended effective January 28, 2011. Again, Plaintiff's claims took place in 2017, which is *after* January 28, 2011. Therefore, the amended regulations effective from January 28, 2011 through June 1, 2020 were in effect and govern his grievances.

dismissal, as long as no exception to exhaustion applies), *overruled on other grounds in Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). Accordingly, a claim may be dismissed without prejudice if it is clear from the record that the prisoner concedes that he did not exhaust administrative remedies. *See id.* The Ninth Circuit has interpreted Section 1997e(a) to mean that an action *must* be dismissed unless the prisoner exhausted his available administrative remedies *before* he or she filed suit, even if the prisoner fully exhausts while the suit is pending. *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

Here, the record shows that Plaintiff concedes that he did not exhaust his administrative remedies as to one of his First Amendment claims *before* filing the instant suit. During his deposition, Plaintiff stated that he never filed an administrative grievance in connection with his claim that Defendants Broomfield and Voong denied him access to established grievance procedures in violation of the First Amendment. Quinn Decl., Ex. A, 32:7-18. Therefore, the Court finds that Plaintiff has failed to exhaust his administrative remedies against Defendants Broomfield and Voong as to Plaintiff's First Amendment claim against them. The record in this case demonstrates that Plaintiff had the opportunity and ability to properly exhaust this First Amendment claim—but he concedes that he failed to do so. Accordingly, the Court GRANTS Defendants' motion for summary judgment as to his First Amendment claim Defendants Broomfield and Voong, which is subject to dismissal without prejudice. *See McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (proper course in claims dismissed due to failure to exhaust administrative remedies is dismissal without prejudice to refiling).

### C.   Analysis of Remaining Claims

#### 1.   First Amendment Retaliation Claims

As mentioned above, Plaintiff claims that Defendants retaliated against him for filing an administrative grievance. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68

(9th Cir. 2005) (footnote omitted).  *Accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) (same); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) (contention that actions "arbitrary and capricious" sufficient to allege retaliation).  The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest.  *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).

### a.  Defendants VanMastrigt, Forncrook, Maxfield, Pearl, Sangmaster, Arnold, Shelton, and Samara

Plaintiff claims that Defendants VanMastrigt, Forncrook, Maxfield, Pearl, Sangmaster, Arnold, Shelton, and Samara violated his First Amendment rights insofar as they were involved in failing to rectify or correct the false RVR and in retaliation against Plaintiff for filing an administrative grievance against Defendant Cartwright.  There is no evidence of causation, however.

The second element of a retaliation action, causation, requires showing that the prison official intended to take the adverse action out of "retaliatory animus" to "silence and punish" the inmate for his or her protected speech, as opposed to for some other reason.  *Shepard v. Quillen*, 840 F.3d 686, 698-91 (9th Cir. 2016) (finding genuine issue of material fact as to whether defendant sent inmate to ad seg with intent to (1) follow Cal. Code Regs. tit. 15, § 3335(a) or (2) retaliate for inmate's complaint about staff misconduct).  Evidence probative of retaliatory animus includes the prison official's expressed opposition to the speech and evidence that the prison official's proffered reason for the adverse action was false or pretextual.  *Id.* at 690. Retaliatory motive may also be shown by proximity and time coupled with inconsistency with previous actions.  *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003).  Mere speculation that

10

United States District Court
Northern District of California

defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

There is no evidence that any of the aforementioned Defendants expressed any animus towards Plaintiff or his history of filing administrative appeals, including the November 13, 2017 grievance against Defendant Cartwright. Plaintiff stated in his deposition that these Defendants retaliated against him because they could have released him from ad seg but failed to do so. Quinn Decl., Ex. A at 22:12-23:3; 28:23-29:4. Thus, Plaintiff's deposition testimony revealed that his retaliation claim against these Defendants does not involve prison officials who took adverse action against him because he engaged in "protected conduct," i.e., filing the November 13, 2017 grievance against Defendant Cartwright. *See id.* Furthermore, in his deposition, Plaintiff claimed that many of the aforementioned Defendants did not communicate with him about the November 13, 2017 grievance against Defendant Cartwright. *Id.* at 18:10-11 (Defendant Pearl); 23:4-7 (Defendant Samara); 31:9-17, 32:2-6 (Defendant Jaugun); 33:5-15 (Defendant Cartwright). Plaintiff also claimed that some of the remaining Defendants did not communicate with him outside of their decisions relating to his placement in ad seg. *Id.* at 23:18-24 (Defendant Sangmaster); 28:1-10 (Defendant Arnold). Thus, no evidence exists showing that prior to these Defendants' alleged retaliatory actions (i.e., failing to rectify or correct the false RVR), they knew about his November 13, 2017 grievance against Defendant Cartwright. As such, Plaintiff seems to only rely upon speculation that these Defendants had a retaliatory motive, which is not sufficient. *See Wood*, 753 F.3d at 904. Accordingly, Defendants VanMastrigt, Forncrook, Maxfield, Pearl, Sangmaster, Arnold, Shelton, and Samara are entitled to summary judgment on Plaintiff's First Amendment retaliation claim, and the motion for summary judgment as to this claim is GRANTED.

### b.  Defendants Cartwright and Jaugan

Plaintiff claims that Defendants Cartwright and Jaugan retaliated against Plaintiff for filing the November 13, 2017 grievance against Defendant Cartwright. Specifically, Defendant

Cartwright falsified an RVR that led to Plaintiff's placement in ad seg, and Defendant Jaugan prepared a false supplemental rules violation report that bolstered Defendant Cartwright's RVR. *See* Dkt. 1 at 16, 17.

However, there is similarly no evidence of causation, namely that Plaintiff's prior November 13, 2017 grievance caused Defendants Cartwright's and Jaugan's actions.

First, as to Defendant Jaugan, this Defendant was *not* named in the November 13, 2017 grievance, and there is no evidence that he knew about it. In his deposition, Plaintiff stated that he never communicated with Defendant Jaugan about the November 13, 2017 grievance or about any inmate appeal for that matter. Quinn Decl., Ex. A at 31:15-17. Furthermore, Plaintiff claims that he never had any conversations or interacted with Defendant Jaugan at any time. *Id.* at 32: 2-6. Thus, no evidence exists showing that Defendant Jaugan expressed any retaliatory animus towards Plaintiff.

Next, as to Defendant Cartwright, who *was* named in the November 13, 2017 grievance, Plaintiff claims that he never discussed that grievance or any inmate appeal with Defendant Cartwright. *Id.* at 33: 5-15. Plaintiff claims that other than their interaction on November 8, 2017, he did not have any other conversations or interactions with Defendant Cartwright. *Id.* at 33:8-15. According to Defendant Cartwright's declaration, he did not know that Plaintiff filed a grievance against him "until weeks after the incident" and he "had no knowledge of the grievance when [he] prepared the [RVR]." Cartwright Decl. ¶ 6. Defendant Cartwright claims that he submitted the RVR (based on the November 8, 2017 incident) on November 15, 2017 because he had been either sick or off work during that one week interim. *Id.* ¶ 3. Defendant Cartwright also points out that once he submitted the RVR, Plaintiff was moved to ad seg because of the "threatening remarks that he had made to [Defendant Cartwright] during the incident." *Id.* ¶ 4. Thus, evidence exists that Defendant Cartwright's action of preparing the RVR was not motivated by Plaintiff's protected speech, but rather by broader prison-security purposes.

To the extent that Plaintiff argues that Defendants Jaugan's and Cartwright's actions took place after Plaintiff filed the November 13, 2017 grievance, mere timing is not enough to show retaliatory motive. Retaliation is not established simply by showing adverse activity by defendant

after protected speech; rather, Plaintiff must show a nexus between the two.  *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this").  As explained above, Plaintiff has failed to show such a nexus.  Absent additional evidence tying Defendants Jaugan's and Cartwright's actions to Plaintiff's protected speech, his claim of retaliatory motive is merely speculative and does not amount to a constitutional violation.  *See id.* (summary judgment proper against plaintiff who could only speculate that adverse employment decision was due to his negative comments about his supervisor six or seven months earlier); *see also Wood*, 753 F.3d at 904.  Accordingly, Defendants Jaugan and Cartwright are entitled to summary judgment on Plaintiff's retaliation claim, and Defendants' motion for summary judgment is GRANTED as to this claim.

### 2.   Eighth Amendment Claim For Filing False RVRs

Plaintiff alleges that Defendants Jaugan and Cartwright are liable for being deliberately indifferent to Plaintiff's mental health needs by writing false RVRs that led to his placement in ad seg, which caused him to suffer anxiety and sleep deprivation.

Deliberate indifference to serious medical needs, or in this case *mental health* needs, violates the Eighth Amendment's prohibition against cruel and unusual punishment.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Mille*r, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  The analysis of a claim of "deliberate indifference" to serious medical needs involves an examination of two elements: (1) the existence of a prisoner's serious medical needs and (2) the establishment of a deliberately indifferent response by the defendants to those needs.  *McGuckin*, 974 F.2d at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "wanton infliction of unnecessary pain."  *Id.* (citing *Estelle*, 429 U.S. at 104).  A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of

United States District Court
Northern District of California

13

facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002) *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and a resulting harm. *See McGuckin*, 974 F.2d at 1060.

Here, Plaintiff presents no evidence indicating that Defendants Jaugun and Cartwright knew of Plaintiff's mental health needs. In his deposition, Plaintiff confirmed that he never mentioned that he suffered from anxiety, sleep deprivation, or any other "psychological or mental health issue that [he was] having in the ad seg" to Defendant Pearl on November 29, 2017, after he was moved to ad seg. Quinn Decl., Ex. A at 15:21-18:11. As mentioned above, after being transferred to ad seg, he met with another psychologist and reported that he had "some adaptation to the ad seg unit," "denied any changes in appetite or sleep," and complained only of weight-loss due to lack of food in his cell. *Id.* at 18:25-19:17.

Furthermore, to state a claim for deliberate indifference, Plaintiff must allege that Defendants Jaugun and Cartwright were subjectively aware that filing the allegedly false RVRs would risk a substantial and dangerous impact on Plaintiff's mental stability, and consciously disregarded that risk. However, as mentioned, Plaintiff has not alleged any facts suggesting that Defendants Jaugun and Cartwright knew or even should have known of the fragility of Plaintiff's mental state, such that they could demonstrate indifference to that condition. Plaintiff does not allege sufficient facts to establish liability with respect to either Defendant Jaugun or Defendant Cartwright. Liability may be imposed on an individual defendant under section 1983 only if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. *Id.* at 633. Here, Plaintiff alleges that

United States District Court
Northern District of California

1    Defendants Jaugun and Cartwright completed the alleged false RVRs.  After Plaintiff was placed

2    in ad seg, he claimed to suffer from anxiety and sleep deprivation from being housed in ad seg.

3    However, nothing in the record shows that Defendants Jaugun and Cartwright could have known

4    about Plaintiff's mental health concerns at the time they completed the RVRs.

5           Furthermore, Defendants argue that Plaintiff cannot support a section 1983 claim against

6    Defendants Jaugun and Cartwright simply on the allegation that these Defendants authored false

7    RVRs, as there is no protected Constitutional right to be free from false disciplinary charges.  Dkt.

8    21 at 16 (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (no constitutional claims

9    based on falsity of disciplinary charges); *Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986)

10   ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly

11   accused of conduct which may result in the deprivation of a protected liberty interest."); *Hanrahan

12   v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984) (allegations of a false or fabricated disciplinary

13   charge against an inmate fail to state a claim under section 1983); *Buckley v. Gomez*, 36 F. Supp.

14   2d 1216, 1222 (S.D. Cal. 1997) (prisoners have no constitutional right to be free from wrongfully

15   issued disciplinary reports); *Harvey v. Burris*, No. C 14-4133-RS(PR), 2015 WL 8178572, *3

16   (N.D. Cal. Dec. 8, 2015) (allegations that defendants filed false disciplinary report did not give

17   rise to section 1983 claim)).  The Court agrees with Defendants.

18          False charges alone are not actionable under section 1983 because falsely accusing a

19   person of misconduct does not violate a right secured by the Constitution or laws of the United

20   States.  For a false accusation to be potentially actionable, the false charge must implicate some

21   constitutional right, such as the Fourteenth Amendment's right to due process.  An allegation of a

22   false charge that results in discipline that is not severe enough to amount to a deprivation of a

23   protected liberty interest under *Sandin*[7]—i.e., by imposing an atypical and significant hardship or

24   by inevitably affecting the duration of confinement—does not state a claim under section 1983.

25   *See Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002) (no section 1983 claim was stated

26   for allegedly false charges because disciplinary confinement imposed was too short to amount to

27

28          _____
             [7] *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

atypical and significant hardship under *Sandin*).  Even if the false charge does result in discipline that amounts to the deprivation of a protected liberty interest under *Sandin*, a section 1983 claim is not stated if the inmate is afforded the procedural protections required by federal law at the disciplinary hearing.  *See Smith*, 293 F.3d at 654; *Sprouse*, 870 F.2d at 452; *Freeman*, 808 F.2d at 951.

In essence, Plaintiff claims in a conclusory fashion that Defendant Jaugun and Cartwright were deliberately indifferent to his mental health needs based on their completion of the aforementioned false RVRs.  However, sweeping conclusory allegations will not suffice.  *See Leer*, 844 F.2d at 634.  Based on these conclusory allegations, Plaintiff cannot demonstrate that Defendants Jaugun and Cartwright were deliberately indifferent to Plaintiff's mental health needs based solely on these Defendants' alleged submission of false RVRs.

Therefore, Defendants' motion for summary judgment is GRANTED as to the Eighth Amendment claim against Defendants Jaugun and Cartwright for deliberate indifference to Plaintiff's mental health needs based on filing false RVRs.

### 3.   Eighth Amendment and Due Process Claims Relating to Plaintiff's Placement in Ad Seg

#### a.   Eighth Amendment Claim

Plaintiff claims that Defendants VanMastrigt, Forncrook, Maxfield, Pearl, Sangmaster, Arnold, Shelton, and Samara violated Plaintiff's Eighth Amendment rights for removing him from his housing and transferring him to ad seg without adequate procedural protections or evidentiary support.

The Eighth Amendment forbids "cruel and unusual punishments."  U.S. Const. amend. VIII.  But, the "transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) *overruled on other grounds by Sandin*, 515 U.S. 472.  Additionally, an indeterminate stay in ad seg, without more, does not constitute cruel and unusual punishment in violation of the Eighth Amendment.  *See Anderson v. County of Kern*, 45 F.3d 1310, 1315-16 (9th Cir. 1995) (no contact with any other inmate in ad seg, either for

16

exercise, day room access or otherwise not cruel and unusual punishment), *cert. denied*, 516 U.S. 916 (1995).

Here, taking the facts in the light most favorable to Plaintiff, as to his allegations relating to deprivations while he was held in ad seg for forty-four days from November 15, 2017 through December 28, 2017, the Court finds that Plaintiff has not presented any evidence to raise a triable issue of fact as to whether the alleged deprivations came anywhere near amounting to cruel and unusual punishment, so as to establish an Eighth Amendment violation.  *Cf. Madrid v. Gomez*, 889 F. Supp. 1146, 1227-30, 1260-65 (N.D. Cal. 1995) (overall harsh conditions of Pelican Bay State Prison's Security Housing Unit do not violate the Eighth Amendment for the non-mentally ill inmates therein).  Therefore, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment claim relating to his placement in ad seg.

### b.  Due Process Claim

Plaintiff claims his due process rights were violated by Defendants VanMastrigt, Forncrook, Maxfield, Pearl, Sangmaster, Arnold, Shelton, and Samara (1) based on their failure to correct the allegedly false RVRs, and (2) insofar as he was removed from his housing and transferred to ad seg without adequate procedural protections or evidentiary support.

The requirements of due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.  *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972).  A protected liberty interest may be created either by the Due Process Clause of its own force or by states through statutes or regulations.  *Sandin*, 515 U.S. at 483-84. The hardship associated with ad seg, such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, is not so severe as to violate the Due Process Clause itself.  *See Toussaint v. McCarthy*, 801 F.2d 1080, 1091-92 (9th Cir. 1986) *abrogated in part on other grounds by Sandin*, 515 U.S. at 482-83.

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Although prison disciplinary proceedings do not require the full panoply of rights due a defendant in a criminal prosecution, the Due Process Clause requires certain minimum procedural protections if (1) state statutes or

United States District Court
Northern District of California

1   regulations narrowly restrict the power of prison officials to impose the deprivation, and (2) the

2   liberty in question is one of "real substance." *Sandin*, 515 U.S. at 477-87; *Wolff*, 418 U.S. at 556-

3   57 n.19.

4   "[R]eal substance" will generally be limited to freedom from (1) restraint that imposes

5   "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"

6   or (2) state action that "will inevitably affect the duration of [a] sentence." *Sandin*, 515 U.S. at

7   484-87.

8   As mentioned above, the hardship associated with ad seg, such as loss of recreational and

9   rehabilitative programs or confinement to one's cell for a lengthy period of time, is not so severe

10   as to violate the Due Process Clause itself. *Toussaint*, 801 F.2d at 1091-92.  Thus, Plaintiff has no

11   constitutional right or interest independently protected by the Due Process Clause to be free from

12   placement in ad seg.  *Id.*  The Ninth Circuit, however, has held that California statutes and prison

13   regulations create a liberty interest in freedom from ad seg which is protected by due process.  *Id.*

14   at 1098.  Title 15 of the California Code of Regulations § 3335(a) permits placement in ad seg

15   where the presence of an inmate in the general population poses a threat to his own safety and/or

16   to an ongoing investigation of serious misconduct or criminal activity.  Cal. Code. Regs. tit. 15,

17   § 3335(a).  Section 3339(a) provides that release from segregation shall occur at the earliest

18   possible time.  *Id.*, § 3339(a).  *Toussaint* held that, when read together, these regulations create a

19   liberty interest in freedom from ad seg.  801 F.2d at 1098.

20   Therefore, before a prisoner may be placed in ad seg for the violation of prison rules, he or

21   she must be afforded five procedural protections.  First, "written notice of the charges must be

22   given to the disciplinary-action defendant in order to inform him of the charges and to enable him

23   to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564.  Second, "[a]t least a brief

24   period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare

25   for the appearance before the [disciplinary committee]."  *Id.*  Third, "there must be a 'written

26   statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action."

27   *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).  Fourth, "the inmate facing

28   disciplinary proceedings should be allowed to call witnesses and present documentary evidence in

18

his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566.  Fifth,

> [w]here an illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff.

*Id.* at 570.

In *Superintendent v. Hill*, 472 U.S. 445, 455 (1985), the Supreme Court held that disciplinary proceedings do not satisfy due process requirements unless there is "some evidence" in the record to support the findings of the prison disciplinary board.  The Ninth Circuit requires that "some evidence" also support a decision to place an inmate in segregation for administrative reasons.  *See Toussaint*, 801 F.2d at 1104-05 (citing *Hill*, 472 U.S. at 455).  Ascertaining whether the standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence.  *Id.*  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached.  *Id.*

First, Plaintiff's fails to state a claim for the violation of due process against the aforementioned Defendants based on their failure to correct the allegedly false RVRs because Plaintiff fails to identify the liberty interest to which he was entitled and that he was deprived of based on their actions.  Also, Plaintiff has not claimed that any of these Defendants had knowledge that the charges listed on the RVR against Plaintiff were false.  Therefore, this claim does not provide a basis for a due process violation.

Second, Plaintiff holds each of the aforementioned Defendants liable for various reasons.  Defendant VanMastrigt as well as Classification Committee members Defendants Forncrook and Maxfield violated his due process rights by approving the Administrative Segregation Unit Placement Notice that resulted from Defendants Jaugan's and Cartwright's false RVRs.  Dkt. 1 at 6, 15-19.  Defendant Sangmaster endorsed the "false allegations" by approving the RVRs, and Defendant Arnold endorsed the false RVRs by classifying the RVR and requesting a mental health assessment.  *Id.* at 6, 30.  Defendant Shelton was the RVR Hearing Officer who found Plaintiff

guilty of Threatening Staff and signed the Disciplinary Hearing Results. *Id.* at 6, 30-37. Defendant Samara was the Chief Disciplinary Officer who affirmed and signed the Disciplinary Hearing Results. *Id.* at 6, 37-39. Finally, Defendant Pearl was the psychologist who conducted Plaintiff's mental health assessment and prepared the mental health assessment report. *Id.* at 6, 19. It seems that Plaintiff claims that these Defendants signed documents which contained false or fabricated charges stemming from the false RVR, but did nothing to correct them and prevent his placement in ad seg. *Id.* at 6; Quinn Decl., Ex. A at 22:12-23:3. However, as stated above, Plaintiff fails to show that these Defendants were aware that the RVRs stemming from the November 8, 2017 incident contained any fabrications. Plaintiff has thus provided no basis on which a jury could find that Defendants VanMastrigt, Forncrook, Maxfield, Pearl, Sangmaster, Arnold, Shelton, and Samara knowingly signed or approved a false or fabricated report.

Meanwhile, Defendant Cartwright has provided a declaration in which he stated under penalty of perjury that on November 8, 2017, he witnessed Plaintiff make "a number of threatening remarks to [Defendant Cartwright], such as, 'You're nothing by a coward, you fucking bitch,' and 'I'll beat your ass when I get out of here.'" Cartwright Decl. ¶ 2. Defendant Cartwright claims that he was sick or off work for the next week and when he returned to work on November 15, 2017, he "prepared a[n] [RVR] concerning the November 8, 2017 incident." *Id.* ¶¶ 3-4. While Plaintiff refutes Defendant Cartwright's version of the events on November 8, 2017, Plaintiff agrees that he was present during the incident but claims that Defendant Cartwright called Plaintiff a "pedophil[e]" during that confrontation. Dkt. 1 at 8. Again, aside from disagreeing with Defendant Cartwright's version of the November 8, 2017 incident, Plaintiff does not present any more evidence other than his conclusory statement that the RVRs written by Defendants Jaugan[8] and Cartwright were "false." *Id.* at 6, 17. As mentioned above, sweeping

---

[8] The Court notes that Defendant Jaugan's supplemental RVR does not relate to the November 8, 2017 incident. Dkt. 1 at 17. Instead, it relates to an April 2017 incident, during which he had a conversation with Plaintiff during which "[Plaintiff] would make rude remarks to [Defendant Jaugan] . . . in regards to [his] accent." *Id.* Plaintiff said, "This Mother Fucker shouldn't be working at the desk, you can't even understand him." *Id.* During another incident in August 2017, Defendant Jaugan claims that while he made his announcements, Plaintiff "would come out of his cell and say, 'You are not in charge! This is Luna's unit so go Fuck yourself.'" *Id.* Plaintiff does not specifically address in what way the aforementioned statements made by

United States District Court
Northern District of California

conclusory allegations will not suffice.  *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.").

Third, any decisions relating to the threatening staff RVR were made by Defendant Shelton, the senior hearing officer.  Dkt. 1 at 30-39.  In reaching the decision to find Plaintiff guilty, Defendant Shelton relied on the report prepared by Defendant Cartwright, the incident package prepared by Defendant VanMastrigt, Plaintiff's "plea, verbal and written statements," the Investigative Employee report, and the mental health assessment report prepared by Defendant Pearl.  *Id.* at 35.  It was then the job of the Defendant Shelton, the Investigative Employee, and the SQSP Investigative Services Unit, not any of the other aforementioned Defendants, to investigate further into the threatening staff RVR.  *See* Dkt. 1 at 30-39.  The record shows that at the hearing for the threatening staff RVR, Plaintiff received advance written notice of the charges, at least twenty-four hours of preparation time, a written statement from the committee explaining the basis for its decision, and the opportunity to present evidence in his defense and call witnesses[9].  *See id.*  Plaintiff was given a hearing on his threatening staff RVR on December 4, 2017.  *See id.*  Thus, it seems that Plaintiff received all the due process protections required by *Wolff*.

Plaintiff claims that during the RVR hearing, Defendant Shelton did not take into account Plaintiff's "RVR supplemental witness report" or his "other witness statements [by] [Correctional Officers] M. Martinez [and] N. Faghirzaden [and] inmate's statements."  Dkt. 1 at 40.  It seems that Plaintiff wished for such evidence to bolster his claim that the charges in the RVR were false.  However, although an inmate has the right under *Wolff* to present documentary evidence in support of his defense, that right is limited by correctional and institutional concerns.  *See Wolff*, 418 U.S. at 566.  A legitimate correctional concern is the prompt resolution of disciplinary

---

Defendant Jaugan were false.  However, the Court considers Defendant Jaugan's supplement RVR to the extent that it was submitted in support of the threatening staff RVR.

[9] The record shows that Plaintiff "elect[ed] not to call witness(es) for his RVR hearing." Dkt. 1 at 31.

charges.  *See generally id.* ("Prison officials must have the necessary discretion to keep the hearing within reasonable limits").  Thus, while *Wolff* requires that an inmate be allowed to present evidence, it does not command that he be allowed unlimited time in which to do so or to make a request that the hearing officer consider evidence not already gathered.  In addition, it may seem that Plaintiff's denial of the charges and that his supporting evidence could create triable issues of fact.  They do not do so, however, because both the Court and a properly-instructed jury must apply the same rule from *Superintendent v. Hill* to determine whether there was a due process violation.  The question for the Court—or for a jury—is not whether Plaintiff was guilty of the offense; instead, the question is whether there was "some evidence" to support Defendant Shelton's decision.  Review of this disciplinary decision illustrates the very limited nature of the "some evidence" inquiry, as the reviewing court (or a jury considering such a claim) cannot reweigh the evidence but instead must consider only whether there was "some evidence" in the record to support the senior hearing officer's conclusion.  *Superintendent v. Hill* does not permit such a re-weighing of the evidence by the Court or by a jury, and instead commands that the decision be upheld if "there is any evidence in the record that could support the conclusion reached by the disciplinary board."  472 U.S. at 455-56.  On the evidence in the record, a reasonable juror could find that there was "some evidence" to support Defendant Shelton's disciplinary decision.

Lastly, the Court notes that on November 15, 2017, Plaintiff was placed in ad seg due to the pending threatening staff RVR stemming from the November 8, 2017 incident.  Dkt. 1 at 18.  An investigation regarding the November 8, 2017 incident was ongoing, and thus Plaintiff was housed in ad seg until that investigation was complete.  *See id.*  As explained above, Title 15 of the California Code of Regulations § 3335(a) permits placement of an inmate in ad seg if that inmate's presence in the general population would threaten an ongoing investigation of serious misconduct or criminal activity.  *See* Cal. Code. Regs. tit. 15, § 3335(a).  Here, the record contains "some evidence" to support the prison officials' decision to place Plaintiff in ad seg during that time, i.e., prior to the RVR hearing.  *See Toussaint*, 801 F.2d at 1104.  The Court notes that after his threatening staff RVR hearing, Defendant Shelton found Plaintiff guilty and assessed a sixty-

day forfeiture of credits.  *See* Dkt. 1 at 35, 37.  The record further shows that at Plaintiff's

Classification Committee Chrono hearing on December 28, 2017, the committee elected to assess

Plaintiff and to impose "a 3 month 16 day mitigated [ad seg] term for [the] RVR dated

11/08/17 . . . ," but it "elect[ed] to suspend the remainder of the [ad seg] term effective

12/28/2017."[10]  Dkt. 1 at 51.  As mentioned, Plaintiff was therefore released from ad seg on

December 28, 2017.

In sum, Defendants are entitled to summary judgment on the due process claim because

(1) Plaintiff has failed to provide any evidence showing that Defendants fabricated charges against

him; and (2) Plaintiff received all necessary due process protections during his detention in ad seg.

Accordingly, their motion for summary judgment is GRANTED as to this claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED as to

all claims.[11]  Dkt. 21.  Plaintiff's unexhausted claim—his First Amendment claim against

Defendants Voong and Broomfield—is DISMISSED without prejudice to refiling after exhausting

California's prison administrative process.  *See McKinney*, 311 F.3d at 1200-01.

The Clerk of the Court shall terminate all pending motions and close the file.

This Order terminates Docket No. 21.

IT IS SO ORDERED.

Dated:  March 1, 2021

_____
JUDGE YVONNE GONZALEZ ROGERS
United States District Judge

---

[10] The Court notes that Plaintiff's claims in his complaint relate only to his initial placement and retention in ad seg as a result of the threatening staff RVR as opposed to the mitigated (and suspended) ad seg term imposed by the committee on December 28, 2017.  *See* Dkt. 1.

[11] The Court's finding that Defendants are entitled to summary judgment as a matter of law on Plaintiff's above-referenced claims obviates the need to address their alternative argument regarding an entitlement to qualified immunity.

23

United States District Court
Northern District of California